**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| BRECEK & YOUNG ADVISORS, INC., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )          **Case No. 09-2516-JAR** |
| | ) |
| LLOYDS OF LONDON | ) |
| SYNDICATE 2003, | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff Brecek & Young Advisors, Inc. ("BYA") filed its Complaint for Declaratory

Relief and Damages seeking a judicial declaration concerning Defendant Lloyds of London

Syndicate 2003's ("Lloyds") contractual obligations under a policy of insurance issued by

Lloyds to BYA and seeking damages for alleged breaches of that insurance contract by Lloyds.

The parties filed cross-motions for summary judgment; the Court granted BYA's motion and

denied Lloyds' motion.  On August 9, 2013, the Tenth Circuit issued its mandate reversing the

Court's entry of summary judgment in favor of BYA, and remanded for further proceedings.[1]

After limited discovery, this matter is now before the Court on BYA's Motion for Summary

Judgment (Doc. 135) and Lloyds' Motion for Leave to File a Third-Party Complaint against

Fireman's Fund (Doc. 132).  The parties have also filed Motions for Leave to file surreplies to

both motions, respectively (Docs. 147, 149).  The Court heard oral argument on May 28, 2014.

After considering the arguments and statements of counsel as well as the written submissions,

---

[1]*Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, 715 F.3d 1237 (10th Cir. 2013).

the Court denies both the motion for summary judgment and for leave to file third-party complaint.

## I.      Summary Judgment Standard

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[3]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[4]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[5]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[6]  Where, as here, the movant bears the burden of proof on a claim or defense, it must show that the undisputed facts establish every element of the claim entitling it to judgment as a matter of law.[7]  If the moving party properly supports its motion, the burden shifts to the non-moving party, "who may not rest upon the mere allegation or denials of his pleadings, but

---

[2]Fed. R. Civ. P. 56(a).

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4]*Id.*

[5]*Id.* at 251–52.

[6]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7]*See id.* at 331 (Brennan, J., dissenting) ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c) that would entitle it to a directed verdict if not controverted at trial.").

must set forth specific facts showing that there is a genuine issue for trial."[8]  In setting forward these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[9]  If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted.[10]  A party opposing summary judgment "cannot rely on ignorance of the facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."[11]  Put simply, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts."[12]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

## II.    Procedural and Factual History

The facts and  procedural history of this case are undisputed and the Court assumes the reader is familiar with the Tenth Circuit opinion that precipitates the matters before the Court, *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*.[14]  The Court will not restate

---

[8]*Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir. 1993).

[9]*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

[10]*Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994).

[11]*Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1998), *aff'd* 939 F.2d 910 (10th Cir. 1991).

[12]*Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

[13]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]715 F.3d 1231 (10th Cir. 2013).

the underlying facts in detail, but will provide excerpts from the opinion as needed to frame its discussion on remand.

### *Underlying Proceedings*

On October 5, 2009, BYA filed this declaratory judgment action against Lloyds, seeking resolution of the number of $50,000 "Each Claim" retentions applicable to the underlying Wahl Arbitration under the Lloyds' claims-made insurance policy effective December 1, 2006 to December 1, 2007 (the "Lloyds Policy").  Approximately two years before, in August 2007, Lloyds agreed to defend BYA in the Wahl Arbitration and appointed defense counsel.  Lloyds asserted that the Wahl Arbitration consisted of twenty-six separate claims, subject to twenty-six $50,000 "Each Claim" retention.  In October 2008, BYA objected to this assertion, claiming that the Wahl Arbitration constituted a single claim under the Lloyds Policy's "Interrelated Wrongful Acts" provision, such that only one retention applied.  Lloyds ultimately paid approximately $385,000 in defense and indemnification to resolve the Wahl Arbitration.

In December 2010, Lloyds asserted a new defense in the Pretrial Order: "Even if the [Wahl] claims could be considered interrelated, which is specifically denied by Lloyds, those claims relate back to a point in time prior to the commencement of the Policy period, and therefore, no coverage would apply."  Those claims are known as the Knotts Claim and the Colaner claim.

The parties filed cross-motions for summary judgment and this Court entered its initial Order in favor of BYA, concluding that the claims in the Wahl Arbitration did arise out of "Interrelated Wrongful Acts" and therefore, only one $50,000 retention applied.[15]  The Court

---

[15]Doc. 89.

permitted Lloyds to file a supplemental motion for summary judgment on the basis of its relation-back theory.

In response to Lloyds' Supplemental Motion for Summary Judgment, BYA asserted that the Wahl Arbitration claims were not sufficiently related to the earlier Colaner and Knotts Claims, or alternatively, that Lloyds had waived or should be estopped from asserting its new relation-back defense.  The Court denied Lloyds' motion, finding that the Wahl claims did not share a "sufficient factual nexus" with the Colaner and Knotts Claims, and rejected BYA's waiver and estoppel arguments.  Based upon its determination that one $50,000 "Each Claim" retention applied, the Court entered judgment against Lloyds in the amount of $1,155,541.73.

### Tenth Circuit Decision

On appeal, Lloyds did not advance its argument in the first summary judgment motion that the twenty-six Wahl claims were not interrelated and therefore were subject to separate $50,000 retentions.  Instead, Lloyds limited its argument to the position it took in its second motion for summary judgment—that because the claims in Wahl Arbitration relate back to the Knotts and Colaner claims, they are wholly outside the Policy coverage.  BYA did not cross-appeal on the waiver and estoppel issue.

The Tenth Circuit held that under the plain language of the Policy, the Wahl, Knotts, and Colaner Arbitrations were connected by common facts, circumstances, decisions, and policies, and thus this Court erred in concluding that the claims asserted in the Wahl Arbitration did not arise from wrongful acts interrelated to the wrongful acts committed outside the Lloyds policy

period.[16]

Despite the fact that BYA did not take a cross-appeal, the Circuit went on to address its waiver and estoppel arguments.[17]  The court rejected BYA's waiver argument, holding that because the underlying dispute concerns whether the Policy provides coverage, it is a coverage defense that cannot be waived.[18]  With respect to the estoppel defense, the court held that it was not inapplicable because coverage is at issue, ultimately concluding that the Court's finding that BYA failed to establish prejudice was an abuse of discretion.[19]  The Circuit noted that this Court characterized BYA's estoppel argument as limited to the argument that Lloyds waited too long to assert its relation-back defense to coverage, and that BYA failed to demonstrate sufficient prejudice, in the form of detrimental reliance, to invoke the defense.[20]  The Circuit held that BYA has identified facts in the record that Lloyds controlled the defense of the Wahl Arbitration throughout its entirety to its termination and contributed to its settlement, and consistently acted as though the Wahl claims were covered under the Policy, subject only to a dispute as to the amount of applicable retentions.[21]  Lloyds then reversed its position and attempted to disclaim coverage altogether eighteen months after paying the Wahl Arbitration settlement, relying on facts and claims it had known about since 2007, which the court found is "more than adequate to

---

[16]*Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, 715 F.3d 1231, 1237–39 (10th Cir. 2013).

[17]*Id.* at 1240.

[18]*Id.*

[19]*Id.* at 1240–42.

[20]*Id.* at 1241.

[21]*Id.* at 1242.

establish prejudice under New York law," which holds that where an insurer defends an action

on behalf of an insured, with knowledge of a defense to the coverage of the policy, it is thereafter

estopped from asserting that the policy does not cover the claim.[22]  The court specifically held

that under New York law, "[p]rejudice is established only where the insurer's control of the

defense is such that the character and strategy of the lawsuit can no longer be altered."[23]  It went

on to hold that, "[h]ere, it is axiomatic that the character and strategy of the Wahl Arbitration can

no longer be altered because it was settled.  Courts have found prejudice for purposes of estoppel

in circumstances in which the insurer's control of the insured's defense has been significantly

less extensive."[24]

    Although the Circuit held that this Court erred in concluding the defense of equitable

estoppel was unavailable to BYA, it further found that "it does not necessarily follow that BYA

is entitled to recover the same damages awarded on summary judgment, on the (erroneous) basis

that the Wahl claims did not relate back to the other claims outside the policy period."[25]  The

Circuit noted that "[c]ertainly, BYA has established prejudice as to Lloyd's attempt to recoup the

approximately $385,000 it already paid—at the time BYA settled the Wahl Arbitration Lloyds

had expressly promised to provide coverage up to that amount."[26]  The court stated that "[i]n

---

[22]*Id.* (quoting *Hartford Ins. Group v. Mello*, 437 N.Y.S.2d 433, 434, 81 A.D.2d 577 (App. Div. 1981)).

[23]*Id.* (quoting *Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.*, 807 N.Y.S.2d 62, 68, 28 A.D.3d 32 (App. Div. 2006)).

[24]*Id.* (citation omitted).

[25]*Id.* at 1243.

[26]*Id.*

determining whether BYA is entitled to any additional recovery, however, the district court must consider the extent to which BYA detrimentally relied on Lloyd's representations, if at all. Thus, the court must consider whether Lloyd's erroneous representation that the twenty-six Wahl claims were not interrelated with the Policy negates any additional claim of detrimental reliance on the part of BYA."[27]

### Post-Remand

This Court held a status conference on September 4, 2013, and granted the parties' request for additional discovery and briefing.[28]  After a sixty-day discovery period, BYA was to file its summary judgment first, setting out its position on remand; Lloyds was to respond with its position and, if appropriate, file a cross-motion for summary judgment, with the option to request more discovery, if needed.  Shortly before BYA timely moved for summary judgment, Lloyds moved for leave to file a third-party complaint against Fireman's Fund Insurance Company ("Fireman's Fund").  At oral argument on the motions, Lloyds stated that it did not intend to file a cross-motion for summary judgment.

## III.    Uncontroverted Facts on Remand

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to Lloyds, the non-moving party.  In addition, certain material facts have been established as uncontroverted by the Tenth Circuit, as noted.

### The Policies

In consideration of premiums paid, Lloyds issued to BYA a claims-made "Broker/Dealer

---

[27]*Id.*

[28]Doc. 126.

and Registered Representatives Professional Liability Policy" effective December 1, 2006

though December 1, 2007 (the "Lloyds Policy").  The Policy had limits of $2 million "Each

Claim" and in the aggregate, with a $50,000 "Each Claim" Retention for Broker/Dealer insureds.


Immediately preceding the Lloyds Policy, Fireman's Fund issued to BYA a claims-made

"Securities Broker/Dealers Errors and Omissions Liability" policy, effective December 1, 2005

to December 1, 2006 ("FFIC Policy").  The FFIC Policy had limits of $2 million "Each Claim,"

and $10 million in the aggregate for Broker/Dealer insureds.

### The Knotts Claim

On September 22, 2005, Michael Knotts commenced a lawsuit in the Court of Common

Pleas for Summit County, Ohio, styled *Michael P. Knotts v. B & G Financial Network, Inc., et

al.*  On December 19, 2006, the NASD notified BYA that it had been named as a respondent in

an arbitration proceeding brought by Knotts.  The Knotts Claim alleged that certain individual

respondents had fraudulently induced him to retire early, churned his investment accounts and

failed to properly advise him about issues impacting his financial portfolio.  Fireman's Fund

applied a $50,000 "Each Claim" deductible to the Knotts Claim, which was satisfied by BYA.

Fireman's Fund agreed to defend and indemnify BYA in the Knotts Claim, ultimately paying

$41,137 for defense and indemnity in excess of the $50,000 deductible.  Lloyds was aware of the

Knotts Claim no later than March 14 2007, because BYA had also notified Lloyds of the Knotts

Claim, and Lloyds denied coverage for that claim by letter dated March 14, 2007.

### The Colaner Claim

On June 13, 2006, attorneys for Pauline and Donald Colaner notified BYA of their intent

to bring a NASD arbitration proceeding against it and several individual respondents. The Colaner claimants alleged that BYA was liable for negligently failing to supervise the individual respondents, who provided unsuitable investment advice and made fraudulent misrepresentations regarding investments. Fireman's Fund applied a $50,000 "Each Claim" deductible to the Colaner Arbitration, which was satisfied by BYA.[29] Fireman's Fund agreed to defend and indemnify BYA in the Colaner Claim, ultimately paying $593,447 for defense and indemnity in excess of the $50,000 deductible. Lloyds was aware of the Colaner Arbitration no later than October 29, 2007, because Lloyds referenced the Colaner Arbitration in its letter to BYA dated October 29, 2007, regarding Lloyds' tender of the Wahl Arbitration to Fireman's Fund.

### *The Wahl Arbitration*

In May 2007, Paul and Marie Wahl served BYA with a Statement of Claim filed with the NASD. The complaint alleged that the Wahl claimants were sold unsuitable investment products, their accounts were "churned" to generate fees and BYA was liable for its failure to supervise certain individual respondents. BYA timely provided notice to Lloyds of the Wahl Arbitration and by letter dated August 9, 2007, Lloyds agreed to defend subject to reservation of rights.[30] Jeffrey Jamieson of the lawfirm Blackwell Sanders, L.L.P., defended and ultimately settled the Wahl claim on behalf of BYA, as well as the Knotts and Colaner claims.

---

[29]It appears that Fireman's Fund also applied a $5,000 "Each Claim" deductible with respect to claims asserted against individual Registered Representatives in the Colaner litigation, such as Bruce Baxter, as provided in the FFIC Policy. The deductible applicable to individual Registered Representatives is not at issue in this case, nor is it material, given that Lloyds does not dispute that BYA fully satisfied any and all applicable deductibles for both the Colaner and Knotts Claims. *See* Doc. 141, Ex. A- 7.

[30]Doc. 136, Ex. E-11.

By letter dated October 29, 2007, Lloyds notified BYA that it had tendered the Wahl Arbitration to Fireman's Fund to determine whether or not it was interrelated to the Colaner Arbitration.[31]  By email sent November 20, 2007, Lloyds notified Leia Farmer, chief compliance officer for BYA,  that coverage counsel for both Lloyds and Fireman's Fund had determined that the Colaner Arbitration was not interrelated with the Wahl Arbitration.[32]  Farmer testified that, based upon the notification from Lloyds that both Lloyds and Fireman's Fund deemed the Wahl Arbitration unrelated to the Colaner Arbitration, BYA understood the Wahl Arbitration would be covered under the Lloyds Policy and took no further action to pursue coverage under the FFIC Policy.

By letter dated November 26, 2007, Fireman's Fund denied coverage for the Wahl Arbitration based on its determination "that the recently filed claims are not covered by the expired policy."[33]  The letter states that "a suggestion has been made that because some of the allegations made in the recently filed [Wahl] arbitration are similar to claims made against the insured in a prior arbitration filed by . . . Colaner . . . the Company should treat the claims as if they were covered under the expired policy."  Fireman's Fund further stated that "there is apparently other valid and collectible insurance."  Farmer testified that BYA was not surprised by Fireman's Fund's denial of coverage because it was consistent with the earlier correspondence from Lloyds that both coverage counsel for Fireman's Fund and Lloyds had determined that the Wahl Arbitration was not related to the earlier Colaner Claim and would be

---

[31]*Id*., Ex. D-13.

[32]*Id*., Ex. D-21.

[33]*Id*., Ex. D-16.

handled by Lloyds.[34] She further testified that if the November 26, 2007 letter had relayed that the Wahl and Colaner Claims were interrelated, she would have "reached out" to Fireman's Fund to secure coverage, and admitted that BYA did not itself tender the Wahl Arbitration to Fireman's Fund.[35]

By letter dated December 12, 2007, Lloyds supplemented its previous coverage letter dated August 9, 2007, and notified BYA that it considered each of the twenty-six individual Wahl claimants to be distinct from the others and therefore subject to separate $50,000 "Each Claim" retentions.[36]  As set forth in the letter, Lloyds acknowledged the "Interrelated Wrongful Acts" provision in its policy, stating that it would "consider all claims based upon or arising out of the same Wrongful Act or Interrelated Wrongful Act as one claim."[37]  Lloyds took the position, however, that "this is not a situation in which the claimants were given advice as a group, or one where every claimant was sold the identical investment product," and accordingly, "the [Wahl] claimants are entirely unrelated except for the fact that they have retained the same attorney to bring their claims."  Lloyds noted that the same rationale was being raised in a Motion to Sever Claims pending in the Wahl Arbitration, and thus "the claims presented cannot be deemed a single Claim under the policy," and that each claim would be considered a separate claim subject to a separate $50,000 retention, whether or not the Motion to Sever was granted or

---

[34]*Id.* Ex. D at 108:19–109:11, 109:14–110:3.

[35]*Id.* at 109:15–110:18.

[36]*Id.*, Ex. D-18.

[37]*Id.*

denied.[38]

By letter dated October 8, 2008, BYA disagreed with Lloyds' analysis of coverage under the Policy regarding the Wahl Arbitration and, specifically, Lloyds' construction of the term "Interrelated Wrongful Acts" as applied to the claims asserted against BYA in the Wahl Arbitration.[39]  BYA took the position that the matter involved a continuous time period with one act of BYA at issue, specifically, whether BYA adequately supervised its representatives.[40]

### *Settlement of Wahl Arbitration*

On or about March 3, 2009, BYA entered into a Mutual Release and Settlement Agreement with the claimants in the Wahl Arbitration.  BYA's portion of the settlement was $669,092.21, paid on March 27, 2009.  BYA paid an additional $312,767.38 for fees and expenses related to the defense of the Wahl Arbitration.  Lloyds prorated the defense costs (attributing defense equally to each of the twenty-six claims in the Wahl Arbitration), and then paid only indemnity for each claim that exceeded the $50,000 "Each Claim" retention, for a total payment by Lloyds of $384,657.79 for defense and indemnity.  The total paid in defense and indemnity for the Wahl Arbitration was $1,366,517.38.[41]  After deducting the $384,657.79 paid by Lloyds, and one $50,000 "Each Claim" Retention from the total incurred amount of $1,366,517.38, the net unreimbursed amount paid by BYA for defense and settlement of the

---

[38]*Id.*

[39]*Id.*, Ex. D-19.

[40]*Id.*

[41]That figure is calcultated as follows: $669,092.21 (BYA's portion of indemnity) + $312,767.38 (BYA's portion of defense) + $384,657.79 (Lloyd s' portion of defense and indemnity) = $1,366,517.38.

Wahl Arbitration is $931,859.59.

### *Coverage Litigation History*

After this Court denied summary judgment to Lloyds and granted summary judgment to BYA on the issue of whether the Wahl Claims were interrelated, Lloyds filed its supplemental motion for summary judgment on the relation-back defense.  Lloyds requested this Court grant summary judgment in its favor and order BYA to reimburse Lloyds for all sums Lloyds had paid in damages and/or defense costs on behalf of BYA in the Wahl Arbitration.  This Court denied Lloyds' motion and Lloyds appealed.

BYA sent a letter dated November 2, 2011, to Fireman's Fund proposing that the parties enter into a tolling agreement so that BYA could pursue coverage for the Wahl Claim under the Fireman's Fund policy in case coverage was not available under the Lloyds policy.[42]

### *Interrelatedness and Remaining Limits*

The Tenth Circuit held that the Wahl, Knotts and Colaner claims were all related, as "[s]everal common facts connect the Wahl, Knotts, and Colaner Arbitration."[43]  Under the terms of both the Lloyds and Fireman's Fund policies, if the Knotts, Colaner and Wahl Claims are interrelated, they are to be treated as a single claim deemed to have arisen at the time of the first such claim.[44]  Both the Knotts and Colaner claims arose during the FFIC Policy period and were covered by Fireman's Fund, and Fireman's Fund imposed a $50,000 "Each Claim" deductible

---

[42]Doc. 141, Ex. B.

[43]*Brecek & Young*, 715 F.3d at 1239.

[44]Doc. 136, Exs. B, C.

for each of the Colaner and Knotts claims.[45]  BYA satisfied the $50,000 "Each Claim" deductible imposed by Fireman's Fund for both the Colaner and Knotts claims, paying a total of $100,000 in deductibles for both claims.[46]  After payment of defense and indemnity for the Knotts and Colaner claims in excess of the "Each Claim" deductible, there would have been at least $1,365,416 of the $2 million "Each Claim" limits available under the FFIC Policy to pay defense and indemnity for the Wahl Arbitration.[47]

## IV.   Discussion

On appeal, Lloyds did not advance the position it took before this Court that the twenty-six Wahl Claims were not interrelated and therefore subject to separate $50,000 retentions. Instead, Lloyds argued that because the Wahl Claims relate back to the Knotts and Colaner claims, they are wholly outside the Lloyds Policy coverage.  The Tenth Circuit agreed, and reversed this Court's conclusion that the claims asserted in the Wahl Arbitration did not arise from wrongful acts interrelated to the wrongful acts committed outside the Lloyds Policy period.[48]  Key to this Court's task on remand, however, the Tenth Circuit also held that this Court "erred in concluding the defense of equitable estoppel was unavailable to BYA."[49] Because the parties' arguments hinge on conflicting interpretation and application of several critical components of the Tenth Circuit's opinion, the Court begins its analysis with what it

---

[45]*Id.* Ex. E.

[46]*Id.*

[47]*Id.* Ex. C.

[48]*Brecek & Young*, 715 F.3d at 1237–39.

[49]*Id.* at 1243.

considers the law of the case on appeal, which in turn drives the scope of the issue on remand.

Under the law of the case doctrine, "once a court decides an issue the same issue may not be relitigated in subsequent proceedings in the same case."[50] "An important corollary of the doctrine, known as the 'mandate rule,' provides that a district court must comply strictly with the mandate rendered by the reviewing court."[51] "[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal."[52]

With these doctrines in mind, the Court determines that the following findings and conclusions by the Tenth Circuit constitute the law of the case. First, the court held that Lloyds was estopped from denying coverage of the Wahl Arbitration as a matter of law. The court applied New York law, which states "[w]here an insurer defends an action on behalf of an insured, with knowledge of a defense to the coverage of the policy, it thereafter is estopped from asserting that the policy does not cover the claim."[53] The court found controlling the rule established in *Albert J. Schiff Associates, Inc. v. Flack*,[54] where the Court of Appeals of New York found the doctrine of estoppel is not rendered inapplicable simply because coverage is at issue:

---

[50]*Zinna v. Congrove*, 755 F.3d 1177, 1182 (10th Cir. 2014) (quoting *Ute Indian Tribe of the Uintah & Ouray Reservatioin v.Utah*, 114 F.3d 1513, 1520 (10th Cir. 1997)).

[51]*Id.*

[52]*Id.* (quoting *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995)).

[53]*Brecek & Young*, 715 F.3d at 1240 (quoting *Hartford Ins. Group v. Mello*, 437 N.Y.S.2d 433, 434 81 A.D.2d 577 (App. Div. 1981)).

[54]417 N.E.2d 84 (N.Y. 1980).

> Distinguished from waiver . . . it is the intervention of principles of equitable estoppel, in an appropriate case, such as where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense. In such circumstances, *though coverage as such does not exist, the insurer will not be heard to say so.*[55]

In so ruling, the court listed several facts pointed out by BYA in the record pertinent to its estoppel claim in finding this Court's conclusion that BYA could not make an adequate showing of prejudice amounted to an abuse of discretion:

> Lloyds was aware of the Knotts claims as early as March 2007, when it denied coverage for that claim on the basis it was made prior to the Policy period. Lloyds was similarly aware of the Colaner proceedings at least as early as October 29, 2007, when it tendered the Wahl Arbitration to Fireman's Fund to determine whether the Wahl Arbitration was interrelated with the Colaner Arbitration. On November 20, 2007, Lloyds notified BYA that coverage counsel for Lloyds and coverage counsel for Fireman's Fund had concluded that the Colaner and Wahl Arbitrations were not interrelated. Lloyds proceeded to appoint counsel and defend the Wahl Arbitration pursuant to its reservation of rights. While the parties continued to dispute whether the Wahl claims would be subject to a single retention or twenty-six separate retentions, Lloyds' appointed counsel entered into Settlement Agreements with each of the claimants in the Wahl Arbitration. Of the approximately $1.3 million paid in defense and settlement of the Wahl claims, BYA paid approximately $930,000 and Lloyds paid approximately $385,000. Of the sum paid by Lloyds, at least $70,000 constituted indemnification, as BYA's total defense costs were approximately $312,000. Lloyds did not assert its relation-back defense in its answer to BYA's complaint, nor did it assert any counterclaims or set-off for amounts it had already paid in connection with the Wahl Arbitration. In the pretrial order completed after discovery, Lloyds took the position that the Wahl claims were not covered by the Policy, but did not assert any claim

---

[55]*Brecek & Young*, 715 F.3d at 1240 (quoting *Schiff*, 417 N.E.2d at 87(emphasis added by Tenth Circuit)).

for damages.  Lloyds' first claim for damages was not made until
its second motion for summary judgment, filed on April 27, 2011,
more than three years after it notified BYA that the Wahl and
Colaner claims were not interrelated.  Thus, BYA argues, for three
years Lloyds consistently acted as though the Wahl claims were
covered under the Policy, subject only to a dispute as to the
amount of applicable retentions.  Lloyds reversed its position and
attempted to disclaim coverage altogether eighteen months after
paying the Wahl settlement, relying on facts and claims of which it
had been aware since 2007.[56]

Based on this, the court held that "BYA has identified facts in the record which support

conclusion that Lloyds controlled the defense of the Wahl Arbitration throughout its entirety to

its termination and contributed to the settlement."[57]  The court held that such a showing is more

than adequate to establish prejudice under New York law, which states that "[p]rejudice is

established only where the insurer's control of the defense is such that the character and strategy

of the lawsuit can no longer be altered."[58]  In this case, the court found it was "axiomatic" that

the character and strategy for the Wahl Arbitration could no longer be altered because it was

settled.[59] The court went on to hold that Lloyds' reservation of rights letters to BYA do not alter

its analysis, as Lloyds omitted reference to its relation back defense in its letters; in fact, the

court noted, the only mention of the Policy's Interrelated Wrongful Acts provision occurred in a

letter in which Lloyds asserts that the individual Wahl claims are unrelated to each other, which

---

[56]*Id*. at 1241–42.

[57]*Id*. at 1242.

[58]*Id*. (quoting *Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.*, 807 N.Y.S.2d 62,
68 28 A.D.3d 32 (App. Div. 2006)).

[59]*Id*. (collecting cases where courts have found prejudice for purposes of estoppel in
circumstances where the insurer's control of the insured's defense has been less extensive).

is fundamentally incompatible with its later position.[60]

Accordingly, the Court finds that it is bound by the law of the case that BYA was prejudiced because Lloyds controlled the defense of the Wahl Arbitration, and thus Lloyds is estopped from disclaiming coverage of the Wahl claims under the Policy.  It is also law of the case that BYA has established prejudice as to Lloyds' attempt to recoup the approximately $385,000 it has already paid.[61]  The Court further finds that facts necessary to the Tenth Circuit's conclusion that equitable estoppel was available to BYA include that Lloyds' reservation of rights letters did not include any reference to its relation-back defense sufficient to prevent BYA's detrimental reliance on the defense provided by Lloyds and that Lloyds tendered the Wahl claim to Firemans's fund on BYA's behalf.[62]

With these parameters established, the Court turns to the issue before it on remand.  In holding that Lloyds was estopped from disclaiming coverage, the Tenth Circuit noted that "it does not necessarily follow that BYA is entitled to recover the same damages awarded by the district court on the (erroneous) basis that the Wahl claims did not relate back to the Knotts and Colaner claims."[63]  The Court explained that "[c]ertainly, BYA has established prejudice as to Lloyds' attempt to recoup the approximately $385,000 it has already paid—at the time BYA settled the Wahl Arbitration Lloyds had expressly promised to provide coverage up to that

---

[60]*Id.* n.7

[61]*Id.* at 1243.

[62]*Id.* at 1236.

[63]*Id.* at 1243.

amount."[64]  The court then rendered the following mandate:

> In determining whether BYA is entitled to any additional recovery, however, the district court must consider the extent to which BYA detrimentally relied on Lloyds' representations, *if at all*.  Thus, the court must consider whether Lloyds' erroneous representation that the twenty-six Wahl claims were not interrelated under the Policy *negates any additional claim of detrimental reliance* on the part of BYA.[65]

BYA argues that it has been prejudiced by Lloyds' conduct for the full amount of the defense and settlement costs it paid in the Wahl Arbitration, minus a single $50,000 "Each Claim" retention, plus interest and costs—that is, the same damages previously awarded by this Court.  BYA takes the broad position that had Fireman's Fund and Lloyds not told BYA in 2007 that it was Lloyds' Policy that covered the claims in the Wahl Arbitration and that the claims were not related to the Colaner claim, it would simply have tendered the claim to Fireman's Fund.  BYA further argues that Fireman's Fund would have paid the claims as an interrelated single claim, and thus only one $50,000 "Each Claim" retention would have applied, and presented evidence that there was enough coverage there to pay the amounts BYA claims as damages.  When pressed by the Court at oral argument to explain the Tenth Circuit's directive to consider whether Lloyds' erroneous representation that the twenty-six claims were not interrelated under the Policy *negates* any additional claim of detrimental reliance, counsel for BYA argued that Lloyds' arguments are one in the same—that is, the Tenth Circuit's directive does not make sense unless the court was referring to the relation-back defense to the Colaner claim because they had already found prejudice with respect to the $385,000 coverage of the

---

[64]*Id.*

[65]*Id.* (emphasis added).

Wahl Claims.  And when further pressed why the Tenth Circuit did not just affirm on the amount

of damages, or at least suggest counsel and the parties look to Fireman's Fund's loss-run figures,

counsel answered that the court did not have before it evidence of how much the deductible was

under the FFIC Policy and whether there were limits left on that policy.

While BYA's karmic read on the Tenth Circuit's mandate is tempting for both its logic

and expedience, it is inconsistent with the directive laid out in the opinion.  The Court concludes

that the mandate must be read narrowly, and within the context of the New York law cited by the

court in its opinion.  As the court explained, New York law holds that equitable estoppel may be

asserted where an insurer, though in fact not obligated to provide coverage and without asserting

or reserving policy defenses, undertakes the defense of the case, and the insured relies on that

defense by losing the right to control its own defense, the insurer will not be able to deny that

coverage exists, even though coverage does not exist.[66]  Accordingly, because Lloyds undertook

the defense of the Wahl Arbitration and did not reserve its relation-back defense, it cannot deny

coverage now that the Tenth Circuit has determined that relation-back applies and coverage does

not exist.  In other words, the court determined that Lloyds was estopped from denying

*coverage*, not that it was estopped from raising the relation-back *defense*.[67]  The Tenth Circuit's

directive regarding determination of detrimental reliance thus applies to Lloyds' representation

---

[66]*Schiff*, 417 N.E.2d at 87; *see also Ill. Union Ins. Co. v. Midwood Lumber & Millwork, Inc.*, No. 13-CV-2466 (ARR) (JO), 2014 WL 639420, at *12–14 (E.D.N.Y. Feb. 18, 2014) (discussing equitable estoppel in insurance context) (citing cases).

[67]Indeed, the Tenth Circuit's reversal of this Court's determination regarding estoppel was based in part on this Court's characterization of BYA's estoppel argument as limited to whether Lloyds waited too long to assert its relation-back defense to coverage.  *Brecek & Young*, 715 F.3d at 1240–41.

regarding its coverage of the Wahl Claims, subject to the lack of interrelatedness between the twenty-six claims, not whether Lloyds represented that those claims related back to the Colaner claim.

When Lloyds first agreed to defend the Wahl Arbitration under the Policy, it was with the understanding that those claims, although a single interrelated claim, were not related to the Colaner claims.  Lloyds then revised its position to accept coverage of the Wahl Arbitration, subject only to a dispute as to the amount of applicable retentions—this new representation that the twenty-six claims were not interrelated would seemingly further foreclose any claim by Lloyds that the Wahl Claim related back to the Colaner claim.[68]  And, as emphasized by the Tenth Circuit, this is the position that Lloyds maintained throughout the Wahl Arbitration and much of the present action.[69]  Thus, the mandate compels this Court to make the determination of whether at the time of settlement of the Wahl Arbitration, that representation by Lloyds negates any additional detrimental reliance because there was not any change in the outcome of the settlement.  As the Circuit determined, BYA established prejudice as to Lloyds' attempt to recoup the $385,000 paid at the time BYA settled the Wahl Arbitration, as Lloyds had expressly promised to provide coverage up to that amount.  But there is no evidence in the record that Lloyd promised more than that, and it appears that BYA entered into the settlement with the knowledge that it would have to litigate whether the twenty-six claims were interrelated.  Any further detrimental reliance or prejudice cannot be determined on the record before this Court.

---

[68]As the Tenth Circuit noted, Lloyds' only mention of the Policy's Interrelated Wrongful Acts provision was in the letter in which it asserted that the individual Wahl claims were unrelated to each other.  *Id*. at 1242, n.7.

[69]*Id*.

Moreover, as Lloyds points out, counsel for Fireman's Fund initially determined that the Wahl Arbitration was not related to the Colaner claim.  After Lloyds took the position that the twenty-six claims were not interrelated in December 2007, BYA followed up with a letter from counsel taking the position that the claims *were* interrelated.  And then, in 2011, after Lloyds filed its supplemental motion for summary judgment asserting the relation-back defense, BYA wrote to Fireman's Fund to discuss the possibility of a tolling agreement, and discussing the ramifications of Lloyds' claim being successful on appeal—that Fireman's Fund would be the responsible carrier for the Wahl Claim.  At the very least, these issues, as well as those set forth above, raise a material question of fact regarding detrimental reliance and additional damages.  Because BYA has the burden of proof on its affirmative defense, summary judgment is denied.

## IV.    Motion for Leave to File Third-Party Complaint

Lloyds requests leave to file a third-party complaint against Fireman's Fund.  Under Fed. R. Civ. P. 14(a)(1), a defendant may implead a third party "who is or may be liable to it for all or part of the claim against it."  A defendant must obtain leave of court to file a "third-party complaint more than 14 days after serving its original answer."[70]  There is no dispute that leave is required for Lloyds to file its proposed third-party complaint, as the request is made nearly four years after the deadline for joinder of additional parties expired in the underlying litigation.

Whether to grant or deny leave to file a third-party complaint is a matter within the sound discretion of the Court.[71]  But because the rule is intended to reduce the multiplicity of litigation,

---

[70]Fed. R. Civ. P. 14(a)(1).

[71]*Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 216 F.R.D. 511, 514 (D. Kan. 2003); *Clark v. Assocs. Commercial Corp.*, 149 F.R.D. 629, 635 (D. Kan. 1993).

courts construe it liberally.[72]  Unless the filing will prejudice another party, the courts should generally allow the filing "of a proper third-party action."[73]  The rule, however, does not permit indiscriminate filing of all third-party complaints—it only permits a defending party to file a third-party complaint against "a non-party who is or may be liable to [the defending party] for all or part of the claim against [the defending party]."[74]

Defendants typically invoke Rule 14(a) in two situations: "(1) where a tortfeasor is seeking contribution from a joint tortfeasor, and (2) where an insured person is pursuing indemnification."[75]  "Although the invocation of Rule 14 is not limited to the above two scenarios, it is crucial that [defendant's] claim against [the third party] is in some way dependent on the outcome of the main claim or that [the third party] is secondarily liable to [defendant]."[76]  Moreover, Lloyds' claim against Fireman's cannot simply be a related claim or one arising against the same general background, but must be based on BYA's claim against Lloyds.[77]  Although Rule 14 was designed to reduce multiplicity of litigation,[78] the principle of secondary

---

[72]*United of Omaha Life Ins. Co. v. Reed*, 649 F. Supp. 837, 841 (D. Kan. 1986).

[73]*Clark*, 149 F.R.D. at 635.

[74]Fed. R. Civ. P. 14(a)(1).

[75]*Willard*, 216 F.R.D. at 513.

[76]*Id.* (citing *Bethany Med. Ctr. v. Harder*, 641 F. Supp. 214, 217 (D. Kan. 1986)).

[77]*Id.*

[78]*United of Omaha Life Ins. Co. v. Reed*, 649 F. Supp. 837, 841 (D. Kan. 1986) (citing *United States v. Yellow Cab Co.*, 340 U.S. 543, 556 (1951)).

or derivative liability is central.[79]  "Therefore, a defendant may not contend that another person is liable directly to the plaintiff.  Rather, the rule allows a defendant to bring in parties if liability may be passed on to the impleaded third party."[80]

In this case, Lloyds' proposed third-party complaint seeks a declaratory judgment that to the extent that Lloyds is or may be liable to BYA for all or part of the claims asserted against it by BYA in its declaratory judgment action against Lloyds, "pursuant to Fed. R. Civ. P. 14(a), Lloyds submits that [Fireman's Fund] should be liable to it to the same extent that Lloyds is or may be liable to BYA."[81]  Lloyds further alleges that based upon the ruling by the Tenth Circuit, coverage for the Wahl matter properly lies under the Fireman's Fund policy and as such, Fireman, not Lloyds, "should be held liable for any and all defense and indemnification in relation to the Wahl matter."[82]  But as the Court discussed above, it is the law of the case that Lloyds is estopped from denying coverage of the Wahl Arbitration under its Policy, at least to the $385,000 paid by Lloyds at the time of settlement; the issue on remand is whether BYA is entitled to any additional recovery based on further detrimental reliance on Lloyds' representations, if at all.

Here, the Court determines that Lloyds has not shown that Fireman's Fund either may be liable to it for the claims asserted by BYA or that his proposed claims against Fireman's Fund are dependent on the current issue on remand before the Court.  Nor is Fireman's Fund

---

[79]*Willard*, 216 F.R.D. at 513 (citing *In re Dep't of Energy Stripper Well Exemption Litig.*, 752 F. Supp. 1534, 1536 (D. Kan. 1990)).

[80]*Id.*

[81]Doc. 134, Ex. A at ¶ 16.

[82]*Id.* at ¶ 17.

derivatively liable to Lloyds—these are two separate insurance providers who issued broker/dealer liability policies to BYA, and Lloyds does not pursue indemnification.  Instead, Lloyds is claiming that Fireman's Fund is liable for the Wahl Arbitration, not Lloyds, which is not a proper claim under Rule 14.  While some courts in other jurisdictions "appear to have carved out an exception—a  declaratory action exception—to the plain language of Rule 14(a),"[83] the Court does not need to resolve this issue, because it would still deny Lloyds' motion in the exercise of judicial discretion, as explained below.

"Even if a litigant shows the requirements of Rule 14 have been met, numerous cases recognize that a court still has discretion to grant or deny a motion for impleader."[84]  Some of the factors considered by courts when exercising this discretion include:

> (1) the benefits of a single action versus prejudice to the other party and confusion, (2) the timeliness of the request and prejudice to the plaintiff in delay, (3) whether the main case would unnecessarily expand in scope, (4) whether interpleading new parties would unduly delay or complicate the trial, and (5) whether the third-party plaintiff's motion states sufficient grounds for the court to evaluate the propriety of third-party complaints.[85]

Here, the Court finds that BYA would be unfairly prejudiced if the Court were to grant Lloyds' motion to file a third-party complaint against Fireman's Fund.  The complaint in this case was filed in 2009.  On remand and following a conference call with counsel on September 4, 2013, this Court entered a supplemental scheduling order requiring the completion of any

---

[83]*See Nat'l Fire Ins. Co. of Hartford v. Nat'l Cable Tele. Coop., Inc.*, No. 10-2532-CM, 2011 WL 1430331, at *2 (D. Kan. Apr. 14, 2011) (citing cases).

[84]*Digital Ally, Inc. v. Z3 Tech., LLC*, No. 09-2292-KGS, 2011 WL 723039, at *4 (D. Kan. Feb. 23, 2011) (citing cases).

[85]*Willard*, 216 F.R.D. at 514.

further discovery by December 4, 2013 and setting January 8, 2014 as the dispositive motion deadline for BYA.[86]  On January 6, 2014, Lloyds moved to implead Fireman's Fund as a third-party defendant.  Adding Fireman's Fund at this stage of the case—after discovery on the limited issue on remand has been completed—would further delay these proceedings.  For example, although the Court is not considering the merits of Lloyds' putative third-party complaint, it is more than likely that Fireman's Fund would oppose being added as a party to this case, and accordingly, would move to dismiss any claims asserted against it.  It is also probable that Fireman's Fund and Lloyds would seek additional discovery regarding coverage issues.  The prejudice to BYA is further compounded by the fact that Lloyds could have, but did not, move to implead Fireman's Fund approximately three years ago, when it first asserted its alternative defense denying any coverage whatsoever.  Moreover, allowing Lloyds to file the third-party complaint would unnecessarily expand the scope of the Tenth Circuit's directive on remand, as previously addressed in the Court's discussion of BYA's motion for summary judgment. Finally, Lloyds would not be prejudiced if the Court denied its motion, as it has not suggested that it would be prevented from filing a separate declaratory judgment action to determine any liability of Fireman's Fund for judgment entered on remand against Lloyds.  Accordingly, Lloyds' motion for leave is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that BYA's Motion for Summary Judgment (Doc. 135) is DENIED;

**IT IS FURTHER ORDERED** that the parties' Motions for Leave to File Sur-reply (Docs. 147, 149) are DENIED as moot;

---

[86]Docs. 127, 130.

**IT IS FURTHER ORDERED** that Lloyds' Motion for Leave to File Third-Party

Complaint (Doc. 132) is DENIED.

**IT IS SO ORDERED.**

Dated: September 29, 2014

                              S/ Julie A. Robinson_____
                              JULIE A. ROBINSON
                              UNITED STATES DISTRICT JUDGE