IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BRECEK & YOUNG ADVISORS, INC.,** )<br>)<br>**Plaintiff,** )<br>)<br>v.   )<br>)<br>**LLOYDS OF LONDON** )<br>**SYNDICATE 2003,** )<br>)<br>**Defendant.** )<br>_____ ) | Case No. 09-2516-JAR |

## MEMORANDUM AND ORDER

After a bench trial, this Court entered judgment in favor of Plaintiff Brecek & Young Advisors, Inc. ("BYA"). This matter is before the Court on Defendant Lloyds of London Syndicate 2003's ("Lloyds") Motion for Amended or Additional Findings Pursuant to Fed. R. Civ. P. 52(b) and Alternative Motion for New Trial Pursuant to Fed. R. Civ. P. 59 (Doc. 225). For the reasons explained in detail below, the Court denies Lloyds' motion.

**I.    Standard**

Fed. R. Civ. P. 52(b) allows, upon a motion file no later than 28 days after entry of judgment, the court to amend its findings or make additional findings and amend the judgment accordingly.[1] Generally, this rule applies to findings of fact and conclusions of law entered after a non-jury trial.[2] "The primary purpose of Rule 52(b) is to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the

---

[1] Fed. R. Civ. P. 52(b).

[2] *Winkel v. Heimgartner*, No. 14-3314-JTM, 2015 WL 5820965, at *1 (D. Kan. Oct. 5, 2015) (citation omitted).

conclusions of law and judgment entered thereon."[3]  "A motion made pursuant to Rule 52(b) will only be granted when the moving party can show either manifest errors of law or fact, or newly discovered evidence; it is not an opportunity for parties to relitigate old issues or to advance new theories."[4]

A motion under Rule 52(b) may be made in conjunction with a motion for new trial under Rule 59.[5]  Under Fed. R. Civ. P. 59(a)(1)(B), a court may grant a new trial on all or some of the issues of a party "after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."[6]  Motions for new trial are committed to the sound discretion of the district court.[7]  Courts do not regard motions for new trial with favor and only grant them with great caution.[8]

## II.   Discussion

The Court incorporates by reference its Memorandum and Order denying BYA's Motion for Summary Judgment on remand,[9] which sets forth in detail the procedural history and facts underlying this action, as well as its Memorandum and Order after the February 25, 2105 bench trial granting judgment in favor of BYA on its claim for additional damages.[10]  The Court will not restate the facts and history in full, but as needed to frame its analysis.

At the bench trial, the issue on remand was whether BYA is entitled to any additional recovery beyond the $385,000 Lloyds already paid.  The mandate included two qualifiers to this

---

[3]*Myers v. Dolgencorp, Inc.*, No. 04-4137-JAR, 2006 WL 839458, at *1 (D. Kan. Mar. 25, 2006) (citing 9A Charles Alan Wright & Arthur A. Miller, *Federal Practice and Procedure* § 2582 (2d ed. 1995)).

[4]*Id.*

[5]Fed. R. Civ. P. 52(b).

[6]Fed. R. Civ. P. 59(a)(1)(B).

[7]*See Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1193 (10th Cir. 1997).

[8]*Franklin v. Thompson*, 981 F.2d 1168, 1171 (10th Cir. 1992).

[9]Doc. 152.

[10]Doc. 217.

Court's determination: 1) consideration of the extent to which BYA detrimentally relied on Lloyds' representations, if at all, and 2) consideration of whether Lloyds' erroneous representation that the twenty-six Wahl claims were not interrelated under the Policy negates any additional claim of detrimental reliance on the part of BYA.[11] After considering the arguments and testimony presented at trial, in particular the testimony of Natalie Haag, the Court found that BYA's reliance on Lloyds' representations regarding coverage was both reasonable and detrimental under New York law.[12]

Lloyds first contends that BYA failed to prove at trial that it was prejudiced by Lloyds' representations because BYA was not dissatisfied with the performance of defense counsel appointed by Lloyds to represent BYA in the underlying Wahl Arbitration. This issue was addressed and rejected by the Court in its bench trial order,[13] and Lloyds presents no new evidence or valid legal argument to warrant relief from the Court's order or for a new trial. Instead, Lloyds' broad assertions are merely a rehash of its previous arguments, and are insufficient to warrant relief under either Rule 52(b) or 59(a)(1)(B).

Second, Lloyds contends that BYA did not prove that the FFIC Policy would *actually* have provided coverage for Wahl had BYA pursued a claim against FFIC, and thus it failed to prove its reliance was detrimental. This issue was also addressed by both the Tenth Circuit and this Court. Specifically, the Tenth Circuit reversed this Court and held that the Colaner, Knotts, and Wahl claims constituted a single interrelated claim under the "interrelated wrongful acts" language of the Lloyds Policy.[14] This Court then found that "[u]nder the terms of both the

---

[11]*Id.* at 23.

[12]*Id.* at 26–30.

[13]*Id.* at 24.

[14]*Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, 715 F.3d 1231, 1239 (10th Cir. 2013).

Lloyds and FFIC policies, if the Wahl, Colaner and Knotts claims are interrelated, they are to be treated as a single claim deemed to have arisen at the time of the first such claim."[15] And because Knotts and Colaner both arose during the FFIC Policy and were covered by the FFIC Policy, it follows that the Wahl Arbitration would have been covered by the FFIC Policy.[16] Thus, the issue of whether coverage existed for the Wahl claim under the FFIC Policy is a legal question that was resolved by both the Tenth Circuit and this Court.

After remand, the parties submitted as joint trial exhibits the FFIC Policy, as well as a loss run showing remaining limits of the FFIC Policy. This Court reviewed all of the evidence, including the FFIC Policy, and found that after payment of defense and indemnity for the Knotts and Colaner claims in excess of the "Each Claim" deductible, there would have been at least $1.3 million of the $2 million "Each Claim" limits available under the FFIC Policy to pay the Wahl claim. After hearing evidence presented at the bench trial, the Court determined that BYA's reliance on Lloyds' representations regarding coverage was detrimental—Ms. Haag's testimony about her uncertainty in 2007, 2008 or 2009 regarding whether Fireman's would have *contested* coverage is irrelevant, as Lloyds' representations that it would provide coverage caused BYA to forego available other coverage from Fireman's Fund.[17] Lloyds has failed to demonstrate any manifest errors or newly discovered evidence and thus, the Court also denies Lloyds relief on this ground.

---

[15]Doc. 217 at 13.

[16]*Id.* at 30.

[17]*Id.* at 29–31. The Court notes that Lloyds sought leave to file a third party complaint to add FFIC to this litigation, which this Court denied. Doc. 152. The Court takes judicial notice that Lloyds then proceeded to file a declaratory judgment action against FFIC in *Lloyds of London Syndicate 2003 v. Fireman's Fund Ins. Co. of Ohio*, Case No. 15-2681-DDC-GLR (D. Kan. 2015), arguing that coverage for Wahl properly lies under the FFIC Policy in light of the Tenth Circuit's ruling that the Wahl Knotts and Colaner claims were all interrelated and must be treated as a single claim. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (explaining a court may take judicial notice of its own files and records as well as facts that are a matter of public record) (citation omitted).

**IT IS THEREFORE ORDERED BY THE COURT** that Lloyds Motion for Amended or Additional Findings Pursuant to Rule 52(b) and Alternative Motion for New Trial Pursuant to Rule 59 (Doc. 225) is DENIED.

**IT IS SO ORDERED.**

Dated: July 11, 2016

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE